## FURBUSH v. LEE COUNTY.

1. PRINCIPAL AND DEPUTY: *Deputy's right to control conduct of principal: Payment; Estoppel.*

Mervin, as deputy of Furbush, collector of revenue of Lee county. delivered to Hewitt interest bea ing State scrip, which he had collected as revenue, to be paid to the County Treasurer on Furbush's indebtedness to the county. Hewitt delivered the scrip to the Treasurer, and took hi, receipt to Furbush for the principal, the Treasurer refusing to allow the interest. Furbush, upon receiving the receipt, repudiated the transaction, and returned the receipt to the Treasurer, and demanded the scrip, and the Treasurer returned it to him. Afterwards, Furbush having defaulted and absconded, Mervin petitioned the County Court, in his own name for the protection of Furbush's sureties, to credit the scrip on Furbush's account, on the ground that the delivery to the Treasurer was a payment. From the evidence, the scrip had not been entered on the Treasurer's books, nor placed with the county funds, and the receipt was not regarded by the Treasurer as a final matter, but merely as a memorandum showing how much Furbush had paid. *Held:* That the deputy could not thus control the conduct of his principal; that he had no right to petition for the sureties; that Furbush had the right to repudiate the transaction, and reclaim the scrip, and that the transaction was no payment; and treating the proceeding, which was docketed on appeal in the Circuit Cour', and conducted in the name of *Furbush* v. *Lee County*, as the suit of Furbush, he was estopped to claim it as a payment.

APPEAL from *Lee* Circuit Court.
Hon. J. N. CYPERT, Circuit Judge.

Furbush v. Lee County.

STATEMENT.

In October, 1879, T. C. Mervin, as deputy collector, and in behalf of the sureties of Furbush, Collector of Revenue of Lee county, filed a petition in the County Court of that county, praying the court to give Furbush credit for the sum of six hundred and seventy-five dollars in his account for county revenue collected, upon the ground that that sum had been paid over by him to the County Treasurer on said account, and the Treasurer's receipt taken for it, and afterward the Treasurer had returned the money to Furbush and taken up the receipt; but the court denied the petition and the petitioner appealed to the Circuit Court. In the Circuit Court the cause was docketed as *W. W. Furbush v. Lee County*, and was submitted to the court sitting as a jury.

The evidence as set out in ths bill of exceptions shows that about the first of January, 1879, Mervin, as deputy collector under Furbush, Collector of Revenue for Lee county, received six hundred and seventy-five dollars in interest bearing State scrip for county taxes for the year 1877, and having no confidence in Furbush's honesty, delivered it to J. M. Hewitt to pay to the County Treasurer on Furbush's indebtedness to the county for taxes collected for that year. Hewitt paid the scrip to the Treasurer and took his receipt for so much paid by Furbush on his account to the county. On the same day he informed Furbush of the payment and delivered to him the receipt, telling him, also, that the Treasurer refused to allow any interest on the scrip since the first of July, 1878, on the ground that the money was then due to the county, and he would not allow the interest since that date. Furbush said he would not be robbed in that way and took the receipt to the Treasurer and demanded the scrip. The Treasurer took the receipt

and returned to Furbush the package of scrip. He testified that he did not regard the transaction with Hewitt as a complete and final transaction of the business with the collector, nor the execution of the receipt as a final matter. It was merely a memorandum showing how much was paid him. The payment had not been entered on his books at the time Furbush called for the scrip, nor had the scrip been distributed with the county funds or placed in the vault.

The court found for the county and rendered judgment against Furbush for cost; and after motion for new trial was overruled, the petitioner filed his bill of exceptions and appealed to this court.

*U. M. Rose*, for appellant:

An agent may employ an agent for mere ministerial purposes; 1 *Hill*, 501; 51 *N. Y.*, 117; *Wharton on Agency*, sec. 33, 645; 10 *Pick.*, 482.

The payment not sufficient. *Sec.* 1031 *Gantt's Digest*. Sheriff not bound to pay over at the same time, all monies collected.

The repayment to Furbush unauthorized. *Gantt's Digest*, sec. 601

EAKIN, J. It appears that when these proceedings began in the County Court in October, 1879, Mervin who had been deputy collector under Furbush, was then himself the clerk and Furbush had left the county. It does not appear whether any settlement had been made between the collector and clerk in 1878 on account of taxes for 1877, or what balance had been found against the collector. It is to be inferred, however, that there was no controversy save as to the particular item to which the motion was directed. The County Court had jurisdiction of the subject matter, and for the purposes of this decision, it may be taken that its action on the motion was final as to the settlement.

The securities of Furbush can not be regarded as parties to the proceedings. They might have been admitted to appear in person or by attorney, but Mervin, as deputy collector, had no more right to represent them than any other individual would have had. It is a fundamental principle of modern pleading that the remedies must be sought in the names of the real parties in interest if they are competent to act *sui juris*. The motion and the appeal are really in the name of Furbush and must be so considered. The deputy had no interest whatever. In this view Furbush is estopped by his contract from claiming that the package of scrip was actually paid into the treasury. He reclaimed it because he was unwilling that it should go into the Treasurer's hands upon such a receipt as that given by the Treasurer to Hewitt. This he had the right to do, remaining liable, however, for the amount actually due. If he acted in bad faith his securities are none the less responsible ; they answer for his fidelity, and he has control of the funds collected until they are finally paid over to the person authorized to receive them.

The courts can not recognize the right of a deputy to control the conduct of his principal, or to act as agent of his principal's sureties, to keep funds out of his principal's hands, and administer them himself. Persons who become sureties with the suspicions which such a course implies, must abide the risks. The practice has been common and results from political causes with which we have nothing to do. Whilst we may sympathise with a people whose circumstances make it necessary, we cannot give it legal sanction.

The case would not be different if the motion had been made in the proper names of the sureties. The court rightly found that the payment into the treasury was never really consummated. The deputy might well have employed an agent or messenger, or obtained the serivces of a friend

to transmit the money to the Treasurer and take a receipt. He could not authorize the messenger however, to take any other than a true receipt for the whole amount paid in, principal and interest. Such a receipt should have been given, as receipts are but memoranda and evidences of facts. If the collector had been on his part liable for interest, it should have been shown by a charge *per contra*. A mere stranger acting for a deputy had no right to determine this question, and the collector might repudiate his action and leave matters *in statu quo*.

Affirm the judgment.